## JOSEPH KAUALUA PAKI, ET AL., *v.* WINIFRED K. SAFFERY, ET AL.

## No. 1659.

EXCEPTIONS FROM CIRCUIT COURT SECOND CIRCUIT. HON. D. H. CASE, JUDGE.

SUBMITTED JUNE 7, 1926.                    DECIDED JUNE 14, 1926.

PERRY, C. J., LINDSAY AND BANKS, JJ.

NEW TRIAL—*verdict—sufficiency of evidence.*

In an action at law to quiet title the findings of fact made by the trial judge, jury having been waived, cannot be disturbed by this court when there is substantial evidence, more than a mere scintilla, sufficient to support the findings.

The evidence in this case held sufficient to support findings and judgment in favor of the plaintiffs.

OPINION OF THE COURT BY PERRY, C. J.

This is an action at law to quiet the title to a certain piece of land described in the declaration by metes and bounds, containing an area of 2.57 acres and situate at Kaanapali on the Island of Maui. The case was tried by the court without the intervention of a jury. The plaintiffs claimed title solely by adverse possession. The defendants' answer was a general denial. On the opening day of the trial they claimed to hold the paper title to an undivided interest as members of a hui which owned the land of Moomoku of which the lot in question was a part. On the second day of the trial and thereafter the defendants claimed title by adverse possession in addition, apparently, to their claim as holders of the paper title. Evidence was adduced at length by both parties. At the conclusion of the trial the court rendered an oral opinion, going into the evidence in detail and showing that in general it disbelieved the evidence given on behalf of the

defendants. It commented on the inconsistency of the two defenses presented by the defendants, that of the paper title and that of title by adverse possession, and concluded in the following words: "The court is of the opinion that the plaintiffs have established their case and have shown that they have had the exclusive, notorious, continuous, adverse and open possession of the property in question, in litigation, for approximately thirty years. and that the defense has none of the evidence that has materially weakened the evidence of the plaintiffs and the defense has failed completely to show any title to the land in question. I have allowed all this evidence in more particularly for the purpose of showing, if it could possibly show, the weakness of defendants' " (plaintiffs'?) "claim, but having allowed it in—heard it all—I feel it doesn't in any material extent whatever weaken the case established by the plaintiffs." A few days later, and presumably for the purpose of complying with the statutory requirement on the subject, the court filed a written "decision" setting forth its findings of fact and conclusions of law and including, *inter alia,* the following: "The court further finds that approximately thirty years immediately prior to the institution of these proceedings Samuel Paki, Sr., and Kekaha Paki" (the predecessors in interest of the present plaintiffs) "entered into and took possession of the premises in question; that previous to the time that the said Samuel Paki, Sr., and Kekaha Paki occupied said premises they were overgrown with brush known as 'glue' and were unoccupied; that immediately after they entered upon said premises the same Samuel Paki, Sr., and Kekaha Paki cleared the same and made improvements thereon, that is, erected dwelling houses, built and erected fences around said premises, cultivated portions of the land in question and dug a well thereon; that Samuel Paki, Sr., and Kekaha Paki and their respective

heirs lived upon and occupied it as their home premises and for almost thirty years, at least since 1896, have continued to openly, and to the exclusion of all others, live upon the premises in controversy.

"The court further finds that neither Kapela Paki nor the defendants as his heirs have, at any time, lived upon, improved, cultivated, or otherwise used or occupied the premises in controversy." Continuing, the court said: "From the testimony adduced, and the findings of fact drawn therefrom, the court is of opinion:

"That plaintiffs have established by a clear preponderance of the evidence that they and their predecessors in interest have, for a continuous period of more than a quarter of a century been in the actual, open, notorious, continuous and exclusive control and possession of the premises in dispute in this case; and, as claimed by them, have title to said premises by right of adverse possession.

"Over the objection of counsel for plaintiffs considerable testimony of a questionable legal character was admitted, the defendants claiming they could thereby establish both paper title and title by adverse possession. From all of the testimony introduced during the trial, including that above referred to, the court is unable to find any testimony that either shows, or tends to show (first) paper title to the land in question in defendants, or (second) title in them by adverse possession.

"The court therefore finds in favor of plaintiffs and against defendants, and judgment may be entered in favor of plaintiffs as prayed for."

The case comes to this court upon three exceptions, the first being to the denial of the defendants' motion for a nonsuit presented at the close of the plaintiffs' evidence, the second being to the court's "findings of fact and decision" on the ground "that the same were contrary

to the law, the evidence and the weight of the evidence"
and the third being to an allowance of certain costs
against the defendants.

As has been repeatedly held by this court, the denial
of a motion for nonsuit or the finding of the facts in
favor of the plaintiff, in an action to quiet title or in
any other action at law, cannot be disturbed by this
court upon exceptions if there was some substantial evi-
dence before the court, more than a mere scintilla, suffi-
cient, in the case of a nonsuit, to establish a *prima facie*
case for plaintiff and, in the case of a verdict or a
decision of the court, to support its findings of fact in
favor of the plaintiff. This court cannot in such a case
weigh the evidence or substitute its view of the same for
that of the trial judge who sits without a jury. In the
case at bar an examination of all the evidence adduced at
the trial shows beyond any doubt that there was ample
evidence before the court to support the·denial of the
nonsuit and the findings of fact as made.

As one element of their defense the defendants pre-
sented some testimony to the effect that one or both of
the plaintiffs' predecessors in interest had entered upon
the land in question under and by virtue of permission
granted by the defendants' predecessor. Assuming that
there was evidence, as perhaps there was not, that the
defendants' predecessor had an interest in the land and
therefore had the right to grant such permission, the
court was amply justified, in the light of all of the other
evidence in the case, in disregarding the testimony relat-
ing to the permissive nature of the occupancy. There
was ample evidence to support a finding that for more
than thirty years next preceding the institution of the
action the plaintiffs' predecessors and the plaintiffs held
possession of the land and that their possession was
actual, open, continuous, notorious, exclusive and hostile

to all the world; and that the defendants had not satisfactorily proven any title in themselves of any nature whatsoever.

It is claimed, however, on behalf of the defendants that the court in its written decision did not find that the possession of the plaintiffs and their ancestors was hostile. This claim is in our opinion unfounded. The word "hostile" is in fact not used in the written opinion or decision; but the language which was used sufficiently carries the inference that the court found that the possession was hostile. It said that for "more than a quarter of a century" the plaintiffs had been "in the actual, open, notorious, continuous and exclusive control and possession of the premises * * * and * * * have title to said premises by right of adverse possession." If the plaintiffs were in "exclusive control" of the land they must have excluded the defendants and their ancestors and all the world. The trial court must be deemed to have been familiar with all of the legal requisites of an adverse possession. Nothing appears to the contrary on the face of its written opinion. It stated that it finds that the plaintiffs have title "by right of *adverse* possession." By that it was certainly meant that the plaintiffs had had a possession that was hostile as well as actual, open, notorious and continuous. The oral opinion, delivered immediately after the conclusion of the evidence (a complete stenographic report of that opinion forms a part of the record on these exceptions), contains the statement that the finding of the court was that the plaintiffs "have shown that they have had the exclusive, notorious, continuous, *adverse* and open possession of the property in question" for more than the statutory period. The word "adverse," as there used, certainly imports hostility. This statement of the trial judge emphasizes the correctness of our understanding of the written decision.

It is further claimed by the defendants that the court made no finding on the question of whether the plaintiffs' possession was in its inception permissive. We think that the findings of fact, as stated in the written opinion of the trial judge, sufficiently show that the court disbelieved the testimony to the effect that the plaintiffs' possession was under or by virtue of permission granted by the defendants' ancestor.

The fees and mileage of witnesses were taxed against the defendants at the rates prescribed by Act 24, L. 1925, amending section 2549, R. L. 1925, and not at the rates prescribed by section 2549 prior to this amendment. The trial in the case at bar commenced on May 18 and ended on May 21, 1925. The written decision was filed on June 6 and judgment was entered on June 10. Act 24, L. 1925, was approved on April 9, 1925, and in section 2 the legislature declared that "this Act shall take effect upon its approval." Section 3, R. L. 1925, provides that "no written law shall be obligatory without being first printed and made public," and section 4 that "all laws, unless otherwise specially provided, shall take effect on the island of Oahu ten days after the promulgation of the same and on each of the other islands, thirty days after such promulgation." Sections 3 and 4, just quoted, are general laws on the subject. They apply when no provision to the contrary is contained in the new statutes themselves. In the present instance the legislature has declared, in unmistakable terms, that Act 24 "shall take effect upon its approval." Act 24, being a later Act and particular upon the point in question, prevails over sections 3 and 4, which are general. The costs in question were correctly allowed.

The exceptions are overruled.

*Enos Vincent* for plaintiffs.

*Wendell F. Crockett* for defendants.